UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
TEMSA ULASIM ARACLARI SANAYI                                            :
VE TICARET A.S. f/k/a TEMSA GLOBAL                                      :
SANAYI VE TICARET A.S.,                                                 :       22 Civ. 492 (JPC)
                                                                        :
                        Petitioner,                                     :       OPINION AND ORDER
                                                                        :
            -v-                                                         :
                                                                        :
CH BUS SALES, LLC f/k/a CH TRADING                                      :
COMPANY,                                                                :
                        Respondent.                                     :
                                                                        :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Petitioner Temsa Ulasim Araclari Sanayi ve Ticaret A.S. f/k/a Temsa Global Sanayi ve Ticaret A.S.[1] ("Temsa") has petitioned to confirm an arbitration award (the "Award") issued against Respondent CH Bus Sales, LLC f/k/a CH Trading Company ("CH Bus"). CH Bus has not opposed the Petition or otherwise appeared in this action. For the reasons below, the unopposed Petition is granted.

## I. Background

### A. Facts

Temsa brought this action under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, 330 U.N.T.S. 38 (June 10, 1958),

---

[1] Petitioner recently changed its name to "Temsa Skoda Sabanci Ulasim Araclari A.S." *See* Dkt. 1 ("Pet.") at 1 n.1, Exh. A. The name change does not affect Petitioner's ability to proceed in this proceeding under its former name. *See, e.g.*, *Soroof Trading Dev. Co. v. GE Microgen Inc.*, No. 10 Civ. 1391 (LGS), 2014 WL 4058061, at *3 (S.D.N.Y. Aug. 14, 2014) (explaining that the fact that the plaintiff "changed its name and continued doing business thereafter under its new name . . . does not alter the factual allegations material to the claims in this case, nor does it alter the parties in this case" (internal quotation marks omitted)).

incorporated by Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-08, and under section 9 of the FAA, *id.* § 9, to confirm and enforce the Award. Pet. ¶ 1. The Award was issued by the International Centre for Dispute Resolution (the "ICDR"), a division of the American Arbitration Association (the "AAA"), in an arbitration concerning a dispute that arose from a distribution agreement, dated February 2, 2010, between Temsa and CH Bus. *Id.* ¶¶ 3, 8; *see* Dkt. 6, Exh. 2 ("Distribution Agreement").

Temsa, a Turkish corporation, manufactures commercial vehicles, such as motorcoaches, buses, and light trucks, in Turkey and sells them worldwide. Dkt. 6, Exh. 1 ("Award") at 4; Pet. ¶ 2. Pursuant to the Distribution Agreement, CH Bus, a Delaware corporation, became the exclusive distributor of Temsa motorcoaches in the United States. Distribution Agreement, art. 1.1, Schedule 2; Award at 4; Pet. ¶ 3. A September 27, 2011 amendment to the Distribution Agreement required CH Bus to pay for all delivered motorcoaches within ninety days of the bill of lading or at the time of sale if the vehicles were sold earlier. Award at 5.

Between 2010 and 2017, CH Bus ordered from Temsa hundreds of motorcoaches for sale in the United States. Pet. ¶ 7. However, sometime in 2017, disputes arose regarding CH Bus's failure to remit payment for seventy-two motorcoaches that CH Bus had ordered and Temsa had manufactured and delivered to CH Bus. Award at 4; Pet. ¶ 7. Temsa directly financed thirty-nine of these motorcoaches, while a Turkish bank ("EximBank") financed the other thirty-three. Award at 4. After CH Bus failed to remit payment to EximBank upon demand, Temsa paid EximBank for the outstanding balance, plus interest and penalties, in exchange for an assignment of EximBank's rights against CH Bus. *Id.* In addition, on March 27, 2017, Temsa agreed to defer CH Bus's payment obligation on a $1 million loan until January 2, 2018. *Id.* at 6. That loan was

never repaid. *Id.* at 8. After the parties unsuccessfully attempted to resolve this dispute, Temsa terminated CH Bus's distributorship on March 20, 2018. Pet. ¶ 7.

The Distribution Agreement provided that "[i]f the parties cannot amicably settle their differences, the parties shall submit all unresolved differences to arbitration." Distribution Agreement, art. 17.3; Pet. ¶ 8. Additionally, "[a]rbitration will be held in New York, New York, in accordance with the then prevailing Commercial Arbitration Rules of the American Arbitration Association. The decision of the arbitrator(s) will be final and binding on all parties, and judgment upon any arbitrator's decision may be entered in any court having competent jurisdiction over like matters." Distribution Agreement, art. 17.3; Pet. ¶ 8.

On March 22, 2018, Temsa commenced arbitration before the ICDR to recover damages for breach of contract. Pet. ¶¶ 1, 9. On November 26, 2018, CH Bus filed its answer and counterclaims in the arbitration, alleging in part, that "many" motorcoaches were defective.[2] Award at 8; Pet. ¶ 10. Both parties jointly selected the members of the arbitration panel (the "Panel"). Pet. ¶ 10. The Panel consisted of Neal M. Eiseman, Peter L. Altieri, and David J. Abeshouse. *Id.* Temsa was represented by counsel in the arbitration. Award at 2; Pet. ¶ 11. CH Bus initially was represented by counsel, but the Panel permitted its attorneys to withdraw on February 4, 2020. Award at 2; Pet ¶ 11. CH Bus continued to actively participate in the arbitration through its Chief Executive Officer, Michael Haggerty. Award at 2; Pet ¶ 11.

On March 20, 2020, the Panel granted partial summary judgment in favor of Temsa, finding CH Bus liable for at least $8,411,813.54. Award at 3. The Panel then held a virtual four-day evidentiary hearing in August 2021 to determine damages for the remainder of Temsa's claims.

---

[2] On January 16, 2020, the Panel held, pursuant to AAA Commercial Rule 57, that CH Bus was precluded from asserting its counterclaims due to its failure to remit arbitration costs. Award at 3. CH Bus was still permitted to present defenses to Temsa's claims. *Id.*

Award at 3; Pet ¶ 12. On November 22, 2021, the Panel issued the Award, finding that CH Bus had breached the Distribution Agreement "by failing to pay for the motorcoaches in a timely manner." Award at 16-17. In total, the Panel awarded Temsa $17,235,028.16, consisting of (1) $15,263,856.67 for the unpaid balance of motorcoaches financed by both Temsa and EximBank, (2) $1,000,000.00 for Temsa's outstanding loan to CH Bus, (3) $770,306.59 for attorneys' fees and expenses, and (4) $200,864.90 in arbitration fees and expenses. Award at 16-17; Pet. ¶ 13. The Panel delivered a copy of the Award to CH Bus via email on November 23, 2021. Pet. ¶ 13. As of the date of the filing of the Petition, CH Bus had paid no portion of the Award. *Id.*

**B. Procedural Background**

On January 19, 2022, Temsa filed the Petition to confirm the Award. Dkt. 1. Temsa served CH Bus with the Petition on January 28, 2022, *see* Dkt. 10, and again delivered a copy by email and overnight delivery on February 15, 2022, *see* Dkt. 16 ¶ 6. CH Bus has not submitted an opposition or otherwise appeared in this action.

## II. Discussion

**A. The Arbitration Award**

    **1. Applicable Law**

The Court has jurisdiction over the Petition pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 21 U.S.T. 2517, 330 U.N.T.S. 38 (June 10, 1958), which has been implemented in U.S. law in Chapter 2 of the FAA, 9 U.S.C. §§ 201-208. *See Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (explaining that 9 U.S.C. § 203 confers "federal jurisdiction over actions to confirm or vacate an arbitral award that is governed by the Convention"). The Convention "appl[ies] to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought,

and arising out of differences between persons, whether physical or legal," as well as "to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." Convention, art. I(1).  In implementing the Convention, the FAA likewise provides that the Convention applies to "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial," although it does not cover "[a]n agreement or award arising out of such a relationship which is entirely between citizens of the United States . . . unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relationship with one or more foreign states."  9 U.S.C. § 202.

Thus, an arbitration agreement falls within the scope of the Convention if four requirements are met: "(1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." *Dumitru v. Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d 328, 335 (S.D.N.Y. 2010) (quoting *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999)).  With respect to the fourth requirement, "[t]he Convention applies to 'arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought.'" *Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007) (quoting 9 U.S.C. § 202).  An action within the Convention's scope is "deemed to arise under the laws and treaties of the United States."  9 U.S.C. § 203.

A party to an arbitration resulting in an arbitral award that falls under the Convention may seek an order of confirmation from a district court within three years of the award.  *Id.* § 207; *see also id.* § 203 ("The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.").  A court "shall confirm"

an arbitration award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.* § 207. "Article V of the Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005); Convention, art. V; *Commodities & Mins. Enter., Ltd. v. CVG Ferrominera Orinoco, C.A.*, No. 19 Civ. 11654 (ALC), 2020 WL 7261111, at *3 (S.D.N.Y. Dec. 10, 2020) (listing the seven grounds).

Specifically, the Convention provides that recognition and enforcement of an award "may be refused" only if the party against whom the award is invoked "furnishes . . . proof" that: (1) the parties to the arbitration agreement were "under some incapacity" or the agreement "is not valid" under the law designated by the parties, or, in the event they have not designated any, the law of the country where the award was made; (2) the party against whom the award is invoked "was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case"; (3) "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration," although any "part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced"; (4) "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place"; or (5) "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." Convention, art. V. Recognition and enforcement may also be refused if "the competent authority in the country where recognition and enforcement

is sought finds that" (6) "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country" or (7) "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." *Id.* The burden of establishing one of these defenses is a "heavy one, as 'the showing required to avoid summary confirmation is high.'" *Encyclopaedia Universalis S.A.*, 403 F.3d at 90 (quoting *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)).

Where, like here, "the arbitration took place in the United States," the award also is "subject to the FAA provisions governing domestic arbitration awards." *Zeiler*, 500 F.3d at 164 (citing Convention, art. VI(1)(e)). Section 10(a) of the FAA enumerates four grounds for vacatur of an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). It is beyond cavil that judicial review of an arbitration award under the FAA—consistent with the Convention—is "very limited . . . to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993) (citation omitted).

The Second Circuit has instructed that "[c]onfirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than

a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Zeiler*, 500 F.3d at 169 (citing *Encyclopaedia Universalis S.A.*, 403 F.3d at 90). When confirming an award, a district judge "does little more than give the award the force of a court order." *Id.* And in doing so, a court affords significant deference to the arbitrator's decision. *See Thai-Lao Lignite (Thai.) Co. v. Gov't of Lao People's Democratic Republic*, 492 F. App'x 150, 152 (2d Cir. 2012) ("[A]lthough the Convention recognizes that an award may not be enforced where predicated on a subject matter outside the arbitrator's jurisdiction, it does not sanction second-guessing the arbitrator's construction of the parties' agreement." (internal quotation marks omitted)). But even if a petition to confirm is unopposed, a court must still ensure that judgment is proper as a matter of law under the undisputed facts. "[D]efault judgments in the context of confirmation and vacatur proceedings are 'generally inappropriate'"; an "unopposed petition should instead be resolved under a summary judgment framework." *Cessna Fin. Corp. v. Gulf Jet LLC*, No. 14 Civ. 2149 (ALC), 2015 WL 337556, at *3 (S.D.N.Y. Jan. 26, 2015) (citing *D.H. Blair & Co., Inc., v. Gottdiener*, 462 F.3d 96, 109-10 (2d Cir. 2006)); *see D.H. Blair & Co.*, 462 F.3d at 109 (when a petition to confirm an arbitration award is unopposed, courts should treat the petition "as akin to a motion for summary judgment").

**2. Analysis**

As a preliminary matter, the Court finds that the Distribution Agreement falls within the scope of the Convention, as the four jurisdictional requirements are satisfied. *See Dumitru*, 732 F. Supp. 2d at 335; 9 U.S.C. § 202. First, the Distribution Agreement is a written agreement. *See generally* Distribution Agreement. Second, the United States is a signatory of the Convention. *See generally* Convention; *see also* 9 U.S.C. § 201. Third, the subject matter of the Agreement— the sale of Turkish motorcoaches—is commercial in nature. *See* Distribution Agreement at 1. Lastly, the Distribution Agreement was a non-domestic agreement under 9 U.S.C. § 202 because

8

the import of such goods from a Turkish company is not entirely domestic in scope. *See Zeiler*, 500 F.3d at 164 (holding that the Convention applied to an arbitration agreement between Israeli corporations and United States corporations because "[t]he commercial transactions decided in the arbitration have a clear international character"); *Yusuf Ahmed Alghanim & Sons,* 126 F.3d at 19 (explaining that the Convention confers federal jurisdiction because the award "involv[es] parties domiciled or having their principal place of business outside the enforcing jurisdiction"). Thus, the Court has jurisdiction under the Convention over the Petition.

Temsa has adequately shown that there is no genuine issue of material fact precluding judgment in its favor. First, the Court finds that the Panel's findings adhered to the terms of the Distribution Agreement and were well within the bounds of its authority. The Panel found that the Distribution Agreement obliged CH Bus to pay for motorcoaches purchased from Temsa. *See* Distribution Agreement, art. 4.1; Award at 5. The Distribution Agreement also provided for arbitration if a dispute occurs. *See* Distribution Agreement, art. 17.3; Award at 2; Pet. ¶ 8. Before the evidentiary hearing, both parties "engaged in a pre-hearing exchange of information, which included document exchange and depositions." Award at 2. At the hearing, the parties offered evidence including witness testimony, and presented their claims and defenses to the Panel. Pet. ¶ 12. The Panel ultimately found that CH Bus "breached the Distribution Agreement by failing to pay for the motorcoaches in a timely manner," Award at 16, and thus is liable for the sum of $17,235,028.16, *id.* at 17. The Panel notified CH Bus of the Award via email on November 23, 2021. Pet. ¶ 13.

The burden of proof with respect to the affirmative defenses set forth in the Convention or grounds for vacatur under the FAA lies with the respondent. *Encyclopaedia Universalis S.A.*, 403 F.3d at 90. Here, the respondent, CH Bus, has not appeared in this action, nor has it opposed the

Petition. Where, as here, the "non-movant does not respond, its failure to contest issues not resolved by the record will weigh against it." *D.H. Blair & Co.*, 462 F.3d at 109; *see also PKT Assocs., Inc. v. Granum Grp., LLC*, No. 18 Civ. 1169 (VEC), 2018 WL 3392879, at *1 (S.D.N.Y. Jul. 12, 2018) (granting petition to confirm arbitration award pursuant to the Convention and explaining that "if a petition to enforce an arbitration award is unopposed, a court need not inquire on its own into whether an exception to enforcement applies" (citation omitted)); *Agility Pub. Warehousing Co. v. Supreme Foodservice GmbH*, 840 F. Supp. 2d 703, 710 (S.D.N.Y. 2011) ("Pursuant to the Convention and the FAA, a district court must confirm an arbitral award unless the party seeking vacatur establishes any of the limited exceptions listed in § 10(a) of the FAA or one of the grounds for refusal specified in the Convention."). Further, there is nothing in the record to suggest that any of the defenses in the Convention or grounds for vacatur in section 10(a) of the FAA would apply in this case.

The Court also confirms the amount awarded by the Panel. The Distribution Agreement required CH Bus to "indemnify, defend and hold harmless [Temsa] from and against any and all claims of every kind whatsoever that arise from or are in any manner related to the negligent acts or omissions or intentional misconduct of [CH Bus] or its employees or agents in distributing the Products and performing its obligations under this Agreement." Distribution Agreement, art. 14.1; *see* Award at 16 (quoting Distribution Agreement, art. 14.1). The Panel reasonably concluded from this language that it had the authority to award attorneys' fees and expenses.[3] Award at 16.

---

[3] The Distribution Agreement also provided for any arbitration to be held "in accordance with the then prevailing Commercial Arbitration Rules of the [AAA]." Distribution Agreement, art. 17.3; *see also* Award at 15 ("[T]he award of the arbitrator(s) may include . . . attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement." (quoting AAA Comm. Rule 47(d)(ii))). CH Bus, on five separate occasions, requested Temsa to pay for attorneys' fees. *See* Award at 15. Furthermore, the Panel interpreted the parties' General

The Panel "considered the submissions by Temsa supporting its request for attorneys' fees and costs," *id.*, and awarded Temsa $750,000.00 in attorneys' fees and $20,306.59 in related expenses, *id.* at 17.  Additionally, the Panel found that CH Bus shall bear *in toto* the costs of "administrative fees and expenses of the ICDR" in the amount of $39,027.40 and "compensation and expenses of the Arbitrators" in the amount of $185,212.50, and ordered that CH Bus reimburse Temsa $200,864.90 for such arbitration fees and expenses.[4] *Id.* at 17.  The Court finds no basis to second-guess the Panel's decision to hold CH Bus liable for arbitration costs and Temsa's attorneys' fees.

In sum, the undisputed facts—specifically, the Distribution Agreement and the Award—show the absence of any genuine issue of fact that the Award should be confirmed, and nothing in the record suggests that any of the defenses listed in the Convention or in the FAA would preclude confirmation.  *See D.H. Blair & Co.*, 462 F.3d at 110; *see also Cessna Fin. Corp.*, 2015 WL 337556, at *4 (granting unopposed petition to confirm arbitral award because the petitioner's submissions "establish[] the existence of a valid and binding contract and arbitration agreement between the parties" and "a 'barely colorable' justification for the Award").  "Although Petitioners have not presented this Court with copies of all the materials on which the [Panel] relied, there is no reason to doubt the [Panel]'s interpretation of those materials." *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Earth Constr. Corp.*, No. 21 Civ. 1443 (JPC), 2021 WL 4975690, at *3 (S.D.N.Y. Oct. 25, 2021) (internal quotation marks omitted).  Plus, "nothing suggests that the arbitration decision was made arbitrarily, exceeded the [Panel]'s jurisdiction, or otherwise was

---

Sales Terms and Conditions to suggest that CH Bus is responsible for "all direct or indirect costs related to the non[-]compliance with the payment terms." *Id.* at 16.

[4] The ICDR expenses and arbitrators' compensation and expenses total $224,239.90.  The Panel ordered CH Bus to reimburse Temsa $200,864.90 to "represent[] the portion of said fees and expenses in excess of the apportioned costs previously incurred by Temsa."  Award at 17.  The Court assumes that $23,375.00—the difference between $224,239.90 and $200,864.90—is the amount of fees and expenses that had been incurred by CH Bus.

contrary to law." *Id.* (internal quotation marks omitted).  Temsa is therefore entitled to judgment as a matter of law, and the Court confirms Temsa's timely application for confirmation of the Award.  The Court also awards post-judgment interest "from the date of the entry of the judgment." 28 U.S.C. § 1961(a).

### III.  Conclusion

For the reasons above, the Petition is granted.  The Clerk of the Court is respectfully directed to enter judgment in the amount of $17,235,028.16.  Post-judgment interest will accrue at the statutory rate.  The Clerk of the Court is also respectfully directed to close this case.

SO ORDERED.

Dated: September 1, 2022
       New York, New York

_____
                    JOHN P. CRONAN
                    United States District Judge